FRANCISCO SERVERA SILVA, demandante y apelante, *v.* JUAN PEDROSA, CELSO CABALLERO y CELESTINO IRIARTE JR., demandados y apelados.

No. 5777.—*Sometido:* Mayo 27, 1932. *Resuelto:* Junio 24, 1932.

*Luis A. Limeres*, abogado del apelante; *Celestino Iriarte* y *F. Fernández Cuyar*, abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

La presente es una acción en cobro de dinero basada en un pagaré que copiado a la letra dice así:

"Pagaremos solidariamente a don Francisco Servera Silva, o a su orden, en San Germán, Puerto Rico, el día diez y ocho de marzo de mil novecientos treinta, la suma de UN MIL DOLLARS, valor recibido. En caso de mora, dicha suma devengará interés a razón de doce por ciento anual.—Nos sometemos expresamente a la competencia de la Corte de Distrito de Mayagüez, Puerto Rico, y nos obligamos a satisfacer las costas y gastos que el cobro de aquella suma ocasione, incluyendo los honorarios del abogado de que el tenedor de este documento se valga en su reclamación.—San Juan, P. R., a 18 de diciembre de 1929.—(Fdo.) Juan Pedrosa.—Deudor.— (Fdo.) Celso Caballero.—Deudor.—Por la presente me constituyo fiador solidariamente responsable del cumplimiento de la precedente obligación.—San Juan, P. R.. a 18 de diciembre de 1929.—(Fdo.) Celestino Iriarte Jr.—Fiador."

Dictada sentencia por la Corte de Distrito de Mayagüez declarando sin lugar la demanda, el demandante interpuso el presente recurso de apelación.

El primer error atribuído a la corte inferior por el apelante se basa en que dicha corte dejó de archivar una opinión escrita fundamentando su sentencia de acuerdo con la ley. Esta corte ha insistido en que los jueces deben cumplir con el deber que la ley les impone. No hay razón alguna que justifique el incumplimiento de este deber. La obediencia y acatamiento a las leyes es lo menos que puede pedirse a un tribunal de justicia. El hecho de que esta corte haya declarado que la falta de cumplimiento de tal deber no justifica la revocación de la sentencia, no releva a las cortes de la obligación de obedecer los preceptos del estatuto.

El demandante señala además otros tres errores que pueden condensarse en uno sólo, porque todos se refieren a la apreciación de la prueba.

Los demandados admiten haber otorgado el documento que sirve de base a esta acción, pero alegan que el Sr. Iriarte suscribió la obligación para facilitar el descuento de la misma en el banco, sin contraer compromiso alguno con respecto al pago y que no han verificado el pago de dicha obligación porque el demandante convino en prorrogar su vencimiento hasta que el demandado Celso Caballero liquidara con el gobierno dominicano una cuenta pendiente de cobro por la ejecución de ciertas obras públicas en aquella república, cuyo pago había de verificarse próximamente en el mes de febrero de 1931.

El demandante Sr. Servera declara entre otras cosas que tenía que recibir de los Sres. Pedrosa y Caballero cierta cantidad de dinero, que el Sr. Iriarte le hizo saber que esos señores no estaban en condiciones de pagar la deuda y se convino en darle un documento por la cantidad de $1,000. Añade que como no podía aceptar un documento si no era bien garantizado el Sr. Iriarte convino en garantizarlo y se

le dió el pagaré por $1,000. El Sr. Iriarte, dice, fué simplemente un mediador amigable en relación con los Sres. Pedrosa y Caballero e intervino para ayudar a unos y a otros. El Sr. Iriarte no fué su representante, pero actuó como su amigo para allanar las cosas. En cuanto al documento, toda la intervención del Sr. Iriarte fué como fiador solidario, con objeto de darle valor al documento, toda vez que Pedrosa y Caballero le manifestaron que no podían consignar dinero en ningún banco de Puerto Rico. Repite que el Sr. Iriarte firmó como fiador solidario y que no entendió que suscribiera el documento para descontarlo en San Germán, que como cuestión de hecho no es cierto que el documento se descontara en el banco de San Germán, que el Sr. Iriarte hizo el documento y se lo remitió acompañado con su firma, que Iriarte se comprometió a firmar el pagaré y que de otro modo no lo hubiera aceptado porque no tenía valor. Agrega que recibió algunos telegramas del Sr. Iriarte donde le decía que hacía gestiones para que le pagaran, que en realidad de verdad no cobró al Sr. Iriarte por cuestión de cortesía, pero que este señor tenía que darse por aludido, toda vez que el cobro no podía efectuarse, que en ningún momento acordó prorrogar dicho pagaré; que ese pagaré nunca ha sufrido prórroga.

El Sr. Iriarte, después de explicar extensamente la intervención que tuvo en este asunto, dice que Servera quería que Caballero le diese una obligación descontable en el banco a cambio de aplazarle una hipoteca que estaba vencida para cuando Caballero terminara la cuestión en Santo Domingo; que entonces Caballero le dijo: "Vamos, yo voy a firmar una obligación para que la descuente, pero ¿para cuándo si es así?", a lo que respondió Servera que a noventa días; que el declarante dijo que Pedrosa había quedado en firmar y que entonces el Sr. Servera dijo: "Bueno, Sr. Iriarte, usted firmará la obligación", a lo que le contestó que no tenía inconveniente y la firmó, no como fiador, sino para facilitar el descuento en el banco; que tres o cuatro días más tarde,

cuando el Sr. Caballero vino de la isla, firmaron todos la obligación y el declarante se la mandó al Sr. Servera; que vino entonces el golpe de estado en Santo Domingo, todas las negociaciones se paralizaron y el Sr. Servera le escribió varias cartas diciéndole que gestionara de los Sres. Pedrosa y Caballero el pago de la obligación; que en ninguna de las cartas se refería al Sr. Iriarte cobrándole dicha obligación; que el declarante no tenía ninguna deuda con el Sr. Servera para que tuviera que garantizarle una obligación; que en esas condiciones el Sr. Servera se personó en su oficina y le dijo: "Vea Ud. mi situación, Sr. Iriarte," y que el declarante contestó: "¿Qué quiere Ud. que yo haga? A Caballero le han demandado, le debe al banco más de $130,000 y no tiene crédito; Pedrosa ha sido demandado innumerables veces por los bancos y no puede pagar;" que entonces el Sr. Servera preguntó cuándo se arreglaba lo de Santo Domingo y al contestarle el declarante que de un momento a otro, convino en dejar todo pendiente hasta que se arreglara la cuestión de Santo Domingo, y que cuando menos lo esperaba el declarante, recibió una carta del Sr. García Méndez donde le decía que Servera le había encargado del cobro de los Sres. Pedrosa y Caballero y que el declarante le contestó diciéndole: "Creo que don Pancho no va a sacar nada demandándolos. El hecho de que me demande ante este Tribunal no va a sacar nada. Dígale que aguarde y que ellos están dispuestos a renovar la obligación y a pagar los intereses;" que el Sr. García Méndez le escribió diciéndole que Limeres se había hecho cargo del asunto; que el Sr. Servera nunca se refería al declarante y que jamás le había hablado de la obligación que tenía con él; que si en algún momento se hubiera insinuado que iba a firmar ese documento como fiador, no hubiera firmado para garantizar una cantidad de $1,000 de la cual no era responsable.

Como hemos visto, el Sr. Iriarte estampó su firma en el documento como fiador solidario, y declaró, sin la oposición

de la parte demandante, que no firmó como fiador sino para facilitar el descuento del documento en el banco. El demandante cita el caso de *Sarria* v. *Alvarez*, 38 D.P.R. 921, y argumenta que la sola declaración de la propia persona obligada al pago no constituye base bastante para refutar el compromiso consignado en una obligación que originó un estado de derecho entre demandante y demandados.

Claro es que el demandante se refiere más bien al valor probatorio de la evidencia oral que a su admisibilidad, ya que el Sr. Iriarte relató extensamente su intervención en este asunto sin ser interrumpido ni molestado durante el curso de su declaración. Declara el Sr. Iriarte que no hubiera firmado el documento si se le hubiera insinuado que lo hacía como fiador. Sin embargo la verdad es que sus palabras aparecen claramente consignadas en el pagaré, y que este pagaré fué enviado por el Sr. Iriarte al Sr. Servera, después de la entrevista celebrada por el demandante con los demandados. El Sr. Iriarte dice que firmó el documento para ser descontado en el Banco, es decir, para que fuese a manos de un tercero, que al vencer la obligación podría exigir su cumplimiento de cualquiera de los firmantes, incluyendo el fiador solidario. Este tercero no estaba obligado a relevar al Sr. Iriarte de la obligación contraída. Resulta, pues, que el Sr. Iriarte sabía, al firmar el documento, que contraía un compromiso que no podía eludir. El Sr. Servera declara que el documento no fué descontado en el banco de San Germán. No aparece que fuese descontado en ningún otro banco. La obligación se firmó en 18 de diciembre de 1929 y la demanda se interpuso en 21 de octubre de 1930. El Sr. Iriarte, sabiendo que el documento permanecía en poder del Sr. Servera, a pesar de las gestiones de cobro que éste practicara, permitió que su firma continuase en el documento, sin que aparezca de los autos que practicara esfuerzo alguno para retirarla. Si el Sr. Iriarte prestó su firma únicamente para que se descontara la obligación, y si el documento no fué des-

contado, parece natural que procurara retirar su firma al desaparecer las razones que le indujeron a firmar la obligación. El Sr. Iriarte declara que no tenía ninguna deuda con el Sr. Servera para que tuviese que garantizarle una obligación. El Sr. Iriarte no firmó el documento como deudor, sino como fiador. Precisamente la fianza es un contrato gratuito por su naturaleza, aunque nuestro Código Civil dispone que puede ser también a título oneroso.

En cuanto a la prórroga de la obligación alegada por los demandados, el Sr. Iriarte declara que él dijo al Sr. Servera que lo de Santo Domingo se arreglaría de un momento a otro, y que entonces Servera convino en dejarlo todo pendiente hasta que se arreglara lo de Santo Domingo. No dice el Sr. Iriarte cuándo fué que tuvo esta entrevista con Servera. No sabemos el tiempo que transcurrió desde esta conversación hasta la interposición de la demanda. La misma declaración del Sr. Iriarte demuestra que Servera, si consintió, lo hizo bajo la impresión de que lo de Santo Domingo se arreglaría de un momento a otro. No sabemos si la cuestión de Santo Domingo se arregló o estaba pendiente de arreglarse cuando se interpuso la demanda. Servera niega rotundamente que hubiese concedido prórroga. En estas condiciones, teniendo en cuenta los hechos tales como aparecen relacionados por los mismos interesados, nosotros creemos que no se ha probado que el Sr. Servera concediera la prórroga que se alega por los demandados en su contestación.

■ Alega por último el Sr. Iriarte en su defensa que no fué requerido de pago. El artículo 1078 del Código Civil, edición 1930, dispone que las obligaciones para cuyo cumplimiento se haya señalado un día cierto, sólo serán exigibles cuando el día llegue, y el artículo 63 del Código de Comercio vigente en las fechas en que se otorgó y venció la obligación dice que los efectos de la morosidad en el cumplimiento de las obligaciones mercantiles comenzará, en los contratos que tuviesen día señalado para su cumplimiento por voluntad de las

partes o de la ley, al día siguiente de su vencimiento. En este caso se trata de un pagaré a la orden que venció en 18 de marzo de 1930. La exigibilidad de la obligación está claramente determinada en la ley, por tratarse de un pagaré para cuyo cumplimiento se ha señalado una fecha cierta, y el acreedor pudo reclamar judicialmente el pago desde la fecha de su vencimiento.

Reconocemos que el Sr. Iriarte actuó en este caso en beneficio de todos y guiado de los mejores propósitos; pero no podemos ignorar que suscribió la obligación como fiador solidario y que tiene que arrostrar las consecuencias de sus propios actos.

Por las razones expuestas, entendemos que *debe revocarse la sentencia apelada y condenarse a los demandados Celso Caballero, Juan Pedrosa y Celestino Iriarte Jr., a pagar solidariamente al demandante la cantidad de $1,000, con los intereses convenidos y las costas.*